UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEWITT EDWIN MILTON, | ) |
| | ) CASE NO. C13-0784-JLR-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, Acting | ) APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Dewitt Edwin Milton proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1955.[1] He completed high school and one year of

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT & RECOMMENDATION
PAGE -1

Case 2:13-cv-00784-JLR   Document 23   Filed 11/25/13   Page 2 of 19

college, and previously worked as a day laborer/custodian.  (AR 53, 211, 213, 253-54.)

Plaintiff first filed applications for DIB and SSI in 2005.  (AR 170-77.)  Following an initial denial of those claims in 2006, plaintiff did not pursue an appeal.  (AR 74-84.)  Plaintiff again filed applications for DIB and SSI in 2007.  (AR 178-88.)  Following denial of these claims initially in 2007 and on reconsideration in 2008 (AR 85-88, 91-95), plaintiff did not pursue an appeal.

In May 2010, plaintiff once again filed applications for DIB and SSI, alleging disability since July 1, 2000.  (AR 189-99.)  His applications were denied initially and on reconsideration, and he timely requested a hearing.  ALJ Verrell Dethloff held a hearing on January 4, 2012, taking testimony from plaintiff.  (AR 49-63.)  On February 9, 2012, the ALJ rendered a decision finding plaintiff not disabled.  (AR 20-41.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on April 16, 2013 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found that plaintiff had income following the alleged onset date that constituted substantial gainful activity (SGA),

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -2

but continued the sequential evaluation upon concluding the issue is questionable and plaintiff did not work at SGA level for the entire time period at issue.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's affective disorder, anxiety-related disorder, and history of polysubstance abuse/dependence. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is able to perform work involving simple tasks and instructions; he is able to perform some complex tasks but not in a consistent manner; he should have no more than superficial and occasional public contact; and he should be limited to non-collaborative tasks, i.e., tasks not interdependent on the work of others. With that RFC, the ALJ found plaintiff able to perform his past relevant work as a custodian.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ alternatively found, with consideration of the Medical-Vocational Guidelines, that plaintiff could perform work existing in significant numbers in the national economy. The ALJ, therefore, concluded plaintiff had not been under

a disability from July 1, 2000 through the date of the decision.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ de facto reopened his earlier claims, failed to properly assess physicians' opinions or his credibility, resulting in error in the RFC assessment, and that the step five finding lacks the support of substantial evidence given the failure to obtain vocational expert testimony. He requests remand for payment of benefits or, in the alternative, for further proceedings. The Commissioner maintains the ALJ's decision has the support of substantial evidence and should be affirmed.

## Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's

credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff asserts the ALJ gave "a host of general reasons largely related indirectly to [his] condition as a homeless person[,]" and that, while he "did have credibility problems," they "can be understood as reflective of his homeless life." (Dkt. 20 at 11.) He argues that the "particular, relevant credibility questions were whether he could maintain appropriate work behavior in a work setting on a sustained basis or sustain competitive work pace[,]" and points to various physicians' opinions as supporting his inability to perform those functions. (*Id.*)

Plaintiff's arguments lack merit. "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750; *accord Lingenfelter*, 504 F.3d at 1035-36. *See also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.") (internal quotation marks and citation omitted). The identification of contrary medical opinion evidence does not, standing alone, demonstrate error in the ALJ's credibility finding. As discussed below, plaintiff fails to demonstrate error in the ALJ's assessment of medical opinion evidence.

Further, an ALJ's consideration of a plaintiff's credibility extends beyond whether a claimant can perform or sustain work. It includes consideration of a variety of factors, including, for example, "(1) ordinary techniques of credibility evaluation, such as the

REPORT & RECOMMENDATION
PAGE -5

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ must also consider factors in Social Security Ruling (SSR) 88-13, including work record, observations of physicians and third parties regarding, *inter alia*, the nature, onset, duration, and frequency of symptoms, precipitating and aggravating factors, and functional restrictions).

Nor does the ALJ's decision simply reflect the inclusion of general reasons indirectly related to plaintiff's life as a homeless person, or the record support the conclusion that any credibility problems can be understood as reflective of his homeless life.  The ALJ discussed contradictions with the medical record and an absence of objective findings supporting the degree of severity alleged.  *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."), and *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ( "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")   He noted plaintiff has a poor work record, *Smolen*, 80 F.3d at 1284 (claimant's work history may be considered), and cited to numerous progress notes as indicating improvement.  *See generally* 20 C.F.R. § 404.1529 (credibility determinations inescapably linked to conclusions regarding medical evidence), and *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.") (cited sources

REPORT & RECOMMENDATION
PAGE -6

omitted). He found evidence indicative of exaggeration and poor effort on testing to weaken the reliability of plaintiff's self-report and put his general veracity into question. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ appropriately considers tendency to exaggerate in rejecting a claimant's testimony), and *Thomas*, 278 F.3d at 959 (ALJ properly considers claimant's failure "to give maximum or consistent effort" on examination; claimant's "efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility.") Finally, the ALJ found plaintiff's "work activity after the alleged onset date coupled with [his] range of daily activities to strongly indicate [plaintiff] is capable of work involving simple tasks and instructions and only limited public contact." (AR 30.) *Tonapetyan*, 242 F.3d at 1148 (ALJ appropriately considers inconsistencies or contradictions between a claimant's statements and her activities of daily living), and *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (ALJ appropriately considered claimant's ability "to hold two previous jobs with a fair amount of success").

      Plaintiff fails to demonstrate error in any of the reasons proffered by the ALJ for finding plaintiff less than fully credible. He, instead, maintains as a general matter that he "was homeless and unreliable, with good days and bad days, times of waxing and waning," and that "the relevant credibility questions were those resolved" by various physicians who rendered opinions supporting a greater degree of limitation than that found by the ALJ. (Dkt. 22 at 11.) However, this argument merely presents a different interpretation of the evidence. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). Because the ALJ provided a

REPORT & RECOMMENDATION
PAGE -7

number of clear and convincing reasons in support of his credibility assessment, and his interpretation of the record can be deemed rational, his credibility conclusion should be upheld.

<p style="text-align:center">Physicians' Opinions</p>

Plaintiff argues error in the ALJ's consideration of several different physicians' opinions. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

A.    <u>Dr. George Ankuta</u>

Dr. George Ankuta examined plaintiff in February 2006. (AR 346-48.) The ALJ assessed Dr. Ankuta's opinions as follows:

> [Dr. Ankuta] indicated that the claimant has overall moderate mental symptoms

and/or impairment ([Global Assessment of Functioning (GAF)] score of 53). Dr. Ankuta opined that the claimant's memory was adequate for performing rote tasks but stated that he would have difficulty recalling instructions, and the claimant's concentration and attention were "fair to minimally adequate."  Dr. Ankuta further stated the claimant reported being socially isolated, but he noted that the claimant was able to get along with others at work in the past.  Dr. Ankuta's opinion of moderate limitations is given weight, as it is consistent with the overall medical record, the opinion of Dr. Koenen, as well as the claimant's range of activities, of which indicate that the claimant is not mentally disabled from limited work.  However, less weight is given to Dr. Ankuta's statement that the claimant "could have difficulty sustaining the pace of competitive work".  This assessment is not consistent with the claimant's subsequent performance on exam with Dr. Koenen, and Dr. Koenen's opinion that the claimant is able to perform simple tasks without difficulty, and complex and detailed tasks with mild limitation.

(AR 32, internal citations to record omitted.)

Plaintiff argues the ALJ failed to provide a specific or legitimate reason for rejecting Dr. Ankuta's opinion as to pace.  He points to Dr. Ankuta's observation that plaintiff's motor activity was retarded, avers it would be reasonable to conclude based on that observation that plaintiff could not sustain a competitive work pace, and that this "would be the dispositive finding for pace assessment."  (Dkt. 20 at 6.)  He maintains that, because Dr. Ankuta's finding rested on specific and different clinical findings than those from Dr. Koenen, Dr. Koenen's findings could not refute the opinion of Dr. Ankuta.  Plaintiff notes that State agency reviewing physician Dr. Steven Haney also opined he "may have difficulty sustaining pace" and that the ALJ accepted Dr. Haney's opinions with favor.  (AR 32, 351.)  Plaintiff also argues the ALJ failed to give specific or legitimate reasons to reject Dr. Ankuta's opinion that "he would have difficulty recalling simple and complex instruction at work[.]"  (AR 348.)

Plaintiff's arguments lack merit.  Notably, both Dr. Ankuta and Dr. Haney opined only that plaintiff "may" have difficulty sustaining pace, while Dr. Haney ultimately concluded

REPORT & RECOMMENDATION
PAGE -9

plaintiff "appears capable of simple work." (AR 348, 351.) Because the RFC assessment is entirely consistent with the opinion of Dr. Haney, the ALJ was not required to provide any reasons for rejecting evidence from this physician. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

Plaintiff otherwise fails to demonstrate error in the ALJ's reliance on contradictory opinion evidence in rejecting Dr. Ankuta's statement as to pace. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164 (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). *Accord Thomas*, 278 F.3d at 956-57 ("When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Here, the ALJ appropriately relied on the August 2010, contradictory opinion of examining physician Dr. Mark Koenen. *See Tonapetyan*, 242 F.3d at 1148-49.

The mere fact that Dr. Ankuta observed retarded motor activity, while Dr. Koenen noted "[n]o psychomotor agitation or retardation" (AR 445), does not demonstrate error in the ALJ's reliance on Dr. Koenen's opinion. As the Commissioner observes, a comparison of the two examinations reveals that Dr. Ankuta and Dr. Koenen observed starkly different results while performing substantially similar testing. For example, while plaintiff "listed the president incorrectly as 'the guy who shot that guy'" to Dr. Ankuta, he "was able to name past presidents

back to Carter" with Dr. Koenen, and while he told Dr. Ankuta he is "not good at subtraction" in being asked to count backwards by threes, he was "able to subtract serial three through 20" with Dr. Koenen.  (AR 347, 446.)  The Court agrees with the Commissioner that the ALJ's evaluation of this evidence should be interpreted in light of the ALJ's finding as to plaintiff's tendency to exaggerate symptoms and give poor effort on testing.  (*See* AR 29 (citing Dr. Ankuta's report in paragraph discussing poor effort and exaggeration).)  *See also Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").  Indeed, Dr. Ankuta repeatedly qualified his opinions with the phrase "if [plaintiff] was performing to the best of his ability" in the mental status examination.  (AR 348.)  The ALJ's reliance on the unqualified, contradictory opinion from Dr. Koenen as to pace was reasonable and should not be disturbed.

Plaintiff also fails to demonstrate reversible error in relation to Dr. Ankuta's opinion that "he would have difficulty recalling simple and complex instruction at work[.]"  (AR 348.)  While the ALJ did not directly identify this opinion as rejected, he noted the opinion and gave weight to Dr. Ankuta's overall assessment as to moderate limitations, finding it consistent with the overall record, the opinion of Dr. Koenen, and plaintiff's activities, "all of which indicate[d]" plaintiff was "not mentally disabled from limited work."  (AR 32.)  Dr. Ankuta's observation as to "difficulty" with simple and complex instructions is not materially different from the RFC assessed.  *See Turner*, 613 F.3d at 1223.  It is further noteworthy that this was one of the findings Dr. Ankuta qualified with the phrase "if he was performing to the best of his ability on mental status questions."  (AR 348.)  For this reason, and for the reasons set forth above, plaintiff fails to demonstrate error in the ALJ's assessment of Dr. Ankuta's opinions.

REPORT & RECOMMENDATION
PAGE -11

01  B.   Department of Social and Health Services Physicians (DSHS)

02  Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting opinion

03 evidence from two DSHS consultative examiners – Dr. Melanie Mitchell and Dr. Wayne Dees.

04 Dr. Mitchell examined plaintiff in May 2011   (AR 520-25), and Dr. Dees examined plaintiff in

05 January 2010 (AR 586-92).

06  The ALJ first assessed the opinions of Drs. Mitchell and Dees in conjunction with those

07 offered by other DSHS consultative examiners and/or treating sources, affording little weight to

08 opinions dated in March 2005 and January 2007 (AR 367-75 (Dr. Carla Heilekson)), September

09 2008 (AR 563-70 (Dr. Dana Harmon)), June 2009 (AR 571-77 (Dr. Phyllis Sanchez)), January

10 2010 (AR 586-92 (Dr. Dees)), June 2010 (AR 593-99 (C. John Hall MSW)), and May 2011

11 (AR 520-25 (Dr. Mitchell)).   The ALJ reasoned:

> These consultative examiners concluded that the claimant has marked to severe impairment in several areas of cognitive and social factors that would interfere with his ability to work.  While there is objective evidence that the claimant has a mental health condition and some resulting limitations, the undersigned finds that these DSHS evaluations are based primarily on the claimant's self-reported symptoms and complaints.  As previously discussed, the claimant appears to have given poor effort and exaggerated on psychological testing, and the undersigned does not find the claimant entirely credible.  The undersigned further notes that these evaluations were conducted to determine the eligibility for state assistance; the claimant was likely aware that the continuation of his state assistance was dependent upon the DSHS evaluations, and he therefore had incentive to overstate his symptoms and complaints.
>
> Moreover, these assessment forms, most notably the reports provided by [Dr. Sanchez and Mr. Hall], consist largely of functional rating check-blocks based on the claimant's self-reported limitations, with little elaboration or clinical findings to support a finding of disability.  Further, the report provided by [Dr. Dees], indicating marked limitations in many functional areas, is inconsistent with the claimant's activities/reported functioning as noted by the psychologist's medical source statement.  This evidence does not support the severe degree of limitations opined.  Lastly, these assessments are not

REPORT & RECOMMENDATION
PAGE -12

consistent with the opinions of consultative examining psychologists Dr. Koenen and Dr. Ankuta, and the claimant's range of activities, all of which indicate that the claimant's mental impairments, although limiting, would not prevent him from performing unskilled work with limited public contact. For all of these reasons, the DSHS consultant opinions are found to be neither controlling nor persuasive, and are given little weight.

(AR 34-35, internal citations omitted.) The ALJ also assessed evidence from Drs. Mitchell and Dees within the context of eight different GAF scores of record:[2]

> Lastly, the record indicates several global assessment of functioning (GAF) ratings in the range of 32 to 56, indicating that the claimant has moderate to serious symptoms and/or major impairment in social and occupational functioning. These assessments have been considered and accounted for to some degree in finding that the claimant is limited to simple, unskilled work requiring only incidental public contact. However, the lower GAF ratings indicating major impairment [(AR 389 (Dr. Koenig's GAF of 32) and AR 552 (Dr. Mitchell's GAF of 38)] are given less weight as being inconsistent with the claimant's 2011 treatment progress notes, range of activities and longitudinal mental health history.

(AR 36, some internal citations omitted).

   (1) <u>Dr. Mitchell</u>:

Plaintiff asserts the ALJ's reasoning in relation to Dr. Mitchell was not specific, stating the ALJ gave only "stray general reasons" for rejecting her opinions, and failed to even address her by name or mention her findings. (Dkt. 20 at 8.) He avers the ALJ's reasons were not legitimate in that he failed to acknowledge Dr. Mitchell's mental status findings and first hand observations offered in support of the assessed limitations and GAF, including plaintiff's presentation as depressed and anxious, his inability to remember three words after five minutes,

---

[2] The GAF scores assessed were from Dr. Ankuta (AR 347), Dr. Elizabeth Koenig (AR 389), Dr. Koenen (AR 446), Dr. Mitchell (AR 552), Dr. Stephen Tangney (AR 556), an unsigned clinical assessment (AR 585), Dr. Dees (AR 589), and Mr. Hall (AR 595).

REPORT & RECOMMENDATION
PAGE -13

and his poor insight and judgment. (AR 522-23, 525.) Plaintiff also maintains the ALJ improperly considered the purpose for which these reports were obtained. *Lester*, 81 F.3d at 832 (purpose for which medical reports obtained does not provide a legitimate basis for rejecting them). Finally, he maintains the ALJ's observation as to inconsistency with treatment notes, activities, and longitudinal health history was overbroad, vague, and not targeted to specific findings made by Dr. Mitchell.

"[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *accord Lester*, 81 F.3d 832 (absent "evidence of actual improprieties," examining doctor's findings entitled to no less weight when examination procured by the claimant than when obtained by the Commissioner). As a general matter, therefore, the fact that the DSHS evaluations were obtained for the purpose of securing state assistance is not properly relied upon in the rejection of the opinions contained therein. However, in this case, the ALJ found evidence of plaintiff's poor effort and/or exaggeration on examination to raise significant credibility issues, noting the opinion of State agency reviewing physician Dr. Diane Fligstein that plaintiff "appeared to have exaggerated symptoms/limitations on exam[,]" and providing examples as reflected in reports from Drs. Koenig and Ankuta. (AR 29 (citing AR 346-48, 383-84, 389, 394).) Given the existence of other evidence undermining the credibility of the medical reports, plaintiff fails to demonstrate that the ALJ's observation as to the purpose of the examinations constitutes reversible error.

Nor does plaintiff demonstrate reversible error in the mere fact that the ALJ grouped a number of physicians' opinions together in his analysis. The decision includes individualized

REPORT & RECOMMENDATION
PAGE -14

discussions of the opinions of seven different physicians (Drs. Koenen, Ankuta, Haney, Fligstein, Eisenhower (affirming Dr. Fligstein's opinion), Elizabeth Koenig, and McRae, and evidence from Mr. Hall, and the above, fairly extensive discussion of medical opinions from seven DSHS and treating medical providers. "The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Here, while separate assessments for each medical report in the record might have been preferable, the ALJ's decision does reflect the consideration of all medical reports of record and the provision of reasons for the rejection of opinions not adopted.

Finally, plaintiff fails to demonstrate error in the reasons proffered for the rejection of Dr. Mitchell's opinions. "An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). *Accord Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.") Plaintiff accurately observes that Dr. Mitchell's report does contain her own observations and the results of the Mental Status Examination conducted. However, the ALJ recognized this fact by agreeing as to the existence of objective evidence of a mental health condition with "some resulting

REPORT & RECOMMENDATION
PAGE -15

limitations[.]" (AR 34.) Nonetheless, the evidence is also reasonably construed as relying in significant part on plaintiff's subjective reporting, which the ALJ found lacking in credibility based on evidence he gave poor effort and exaggerated on psychological testing. While plaintiff presents a different interpretation of the evidence from Dr. Mitchell, he fails to demonstrate the ALJ's interpretation of that evidence was not rational.

An ALJ also properly relies on inconsistency with the record, *Tommasetti*, 533 F.3d at 1041, and with a claimant's level of activity, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), in rejecting opinion evidence. The ALJ here pointed to inconsistency with the reports of other examining physicians, from Drs. Koenen and Ankuta, and evidence of plaintiff's activities, "all of which indicate that [plaintiff's] mental impairments, although limiting, would not prevent him from performing unskilled work with limited public contact." (AR 35.) The ALJ had previously described plaintiff's activities as including "attending to self-care, doing his own laundry, accessing needed services, taking public transportation, using his EBT card at stores to buy food, attending regular counseling sessions, engaging with mental health staff on weekly basis, . . . participating in group meetings[, . . . ] occasional social activities with friends including going to the park and library[,] " and his engagement "in work activity after the alleged disability onset date." (AR 30.) He noted that the evidence of plaintiff's work activity included work in 2001 and 2002 as a day laborer/custodian, and income at the SGA level in 2006 for work performed at a shelter as a doorman/night supervisor. (*Id*.) Plaintiff fails to demonstrate that the ALJ's consideration of this evidence was not rational.

Finally, the ALJ stated that he considered and accounted for various GAF ratings to some degree in finding plaintiff limited to simple, unskilled work requiring only incidental

REPORT & RECOMMENDATION
PAGE -16

public contact, but gave less weight to lower GAF ratings indicating major impairments, including the rating assigned by Dr. Mitchell, as inconsistent with treatment progress notes from 2011, plaintiff's activities, and the longitudinal mental health history. (AR 36.) The ALJ had previously described the medical evidence, including the 2011 progress notes, in detail and discussed plaintiff's activities as described above. Given that discussion, plaintiff's contention that these reasons were overbroad, vague, and not targeted to specific findings of Dr. Mitchell should be rejected. *See generally Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). For this reason, and for the reasons set forth above, plaintiff fails to demonstrate error in the ALJ's consideration of the opinions of Dr. Mitchell.

2. <u>Dr. Dees</u>:

Plaintiff takes issue with the ALJ's statement that Dr. Dees' findings of marked limitations were inconsistent with plaintiff's activities and reported functioning as noted on his medical source statement. Dr. Dees' medical source statement reflected plaintiff's ability to access needed services, utilize public transportation, utilize his EBT card, and that he "is fairly consistent with [activities of daily living] care despite being homeless." (AR 591.) Plaintiff argues "these abilities were not indicative of the rigors of the work world, and so were not contradictory of the functional limitations and global impairment Dr. Dees found, which would relate to sustained work efforts." (Dkt. 20 at 10 (citing *Fair v. Bowen*, 885 F.2d 597, 602-203 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Yet if a claimant is able to spend a substantial part of his day engaged in pursuits

REPORT & RECOMMENDATION
PAGE -17

involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."))  However, the ALJ did not find the activities identified by Dr. Dees as transferable to a work setting.  He reasonably identified as inconsistent assessed marked limitations in, for example, plaintiff's ability to perform routine tasks and interact appropriately in public contacts, with the finding that plaintiff was capable of performing tasks of a routine nature and involving public contact.

Plaintiff also raises the same arguments raised in relation to Dr. Mitchell, that is, the rejection of Dr. Dees' opinions in a group fashion, the issue of secondary gain, and the finding as to inconsistency with treatment notes, activities, and longitudinal mental health.  However, for the same reasons set forth above, plaintiff fails to demonstrate error in relation to Dr. Dees.  The ALJ's assessment of the opinions of Dr. Dees should, therefore, be upheld.[3]

## OTHER ARGUMENTS

Plaintiff raises several other arguments not requiring substantial discussion.  First, plaintiff argues the ALJ de facto reopened his earlier claims.  However, because plaintiff identifies no reversible error in the ALJ's decision – whether viewed as limited to plaintiff's 2010 application or as inclusive of reopened claims – the Court need not decide this issue.  Second, plaintiff argues that, given the errors alleged, the RFC lacks the support of substantial evidence.  This restating of plaintiff's argument fails to establish error at step four.  *See*

---

[3] Defendant also argues the opinions of Dr. Dees could not form the basis for an affirmative finding of disability since he opined plaintiff would be impaired as assessed for a maximum of nine months (AR 591), and this opinion did not, therefore, meet the twelve-month durational requirement needed for a finding of disability.  However, the Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225.

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  Finally, plaintiff argues the ALJ erred in relying solely on the Medical-Vocational Guidelines and not obtaining the testimony of a medical expert at step five given the inclusion of a non-exertional limitation in the RFC.  However, because plaintiff fails to demonstrate error in the ALJ's conclusion that plaintiff could perform his past relevant work at step four, any error in the ALJ's alternative step five finding would be harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'") (cited sources omitted), and *Carmickle*, 533 F.3d at 1162-63 (the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 25th day of November, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge